411 So.2d 614 (1982)
Merlin FLAIR
v.
The BOARD OF COMMISSIONERS OF the ORLEANS LEVEE BOARD, The City of New Orleans Through the Department of Streets, T. L. James and Co., Inc. and Atlas Construction Co., Inc.
No. 12350.
Court of Appeal of Louisiana, Fourth Circuit.
March 9, 1982.
Dillon & Cambre, Gerard M. Dillon, New Orleans, for defendants-appellees.
Roger J. Larue, Jr., Metairie, for plaintiff-appellant.
Before SAMUEL, REDMANN and GULOTTA, JJ.
SAMUEL, Judge.
Plaintiff, Merlin Flair, filed suit against defendants, The Board of Commissioners of the Orleans Levee Board, the City of New Orleans Through the Department of Streets, T. L. James and Co., Inc., and Atlas *615 Construction Co., Inc., seeking damages for injuries he sustained on September 23, 1976 when he drove his automobile off the end of the crown of a levee constructed along the south shore of Lake Pontchartrain by defendant, Atlas Construction Co., Inc. Defendants answered denying liability.
After a trial on the merits, judgment was rendered in favor of defendants, Atlas and T. L. James, and against plaintiff, dismissing his suit but assessing costs against those two defendants.[1] (In the remainder of this opinion T. L. James and Atlas are referred to as "defendants".)
Plaintiff has appealed and defendants have answered the appeal seeking reversal of the assessment of costs against them.
At the intersection of Interstate 10 and U. S. Highway 11 in eastern New Orleans, a shell service road begins and runs toward New Orleans in an east-west direction parallel to I-10. Approximately one mile from its beginning, the service road crosses the top of an old levee, proceeds down its western side, and makes a 90° turn in a northward direction. From the turn the shell road proceeds northerly along the base of the old levee. Near the point where the old levee meets Lake Pontchartrain, a parking area exists on the eastern side. Near this point a new levee, the one constructed by Atlas, off which plaintiff drove, intersects with the old levee and the shell road ends. The new levee, called a hurricane protection levee, proceeds in an east-west direction along the shore of Lake Pontchartrain. The crown of the new levee has a clay surface and a width of 20 feet. Pursuant to a contract with the United States Corps of Engineers, Atlas was required to leave a large gap in the hurricane protection levee at the point of the accident to avoid building the levee across large gas transmission pipelines. The levee resumed on the other side of the space left for the pipelines. At the time of the accident in suit, construction of the levee had not been fully completed, and no remaining work had been done for a considerable period of time.
The elevation of the levee where plaintiff's automobile went off was 15.0 feet, and the spot where plaintiff's automobile struck the ground had an elevation of 3.4 feet. Plaintiff's car traveled 55 feet in the air before striking the ground.
The trial judge felt that Atlas was guilty of negligence by allowing the gap in the levee to remain without adequate warning to oncoming vehicles or pedestrians. Testimony was adduced that wooden barricades originally were placed on the levee to prohibit trespassing by vehicles, but after finding the barricades broken on several occasions, Atlas decided to use dirt mounds as a hinderance to keep people and vehicles off the crown. From this evidence, the court drew the conclusion that Atlas was on notice the crown of the levee was used by vehicles and therefore held it had a duty to warn of the existence of the gap, which he characterized as a "trap". The court cited as authority Shelton v. Aetna Casualty & Surety Company, La., 334 So.2d 406. We agree with this finding and holding. The court also found plaintiff guilty of contributory negligence.[2]
The evidence concerning plaintiff's contributory negligence basically emanates from his own testimony. He admitted knowledge of a sign, posted by the Orleans Levee Board, advising motorists not to ride on the levee. This sign was posted pursuant to R.S. 38:213 which provides in pertinent part:
"No person shall ride, drive, or haul upon the public levees except where, in the judgment of the levee commissioners of a district and the Department of Public Works, ample provision has been made *616 to guard against any damage to which the levees may thereby be exposed from wear, tear, and abuse." LSA-R.S. 38:213.
Plaintiff testified he was driving along the top of the levee looking for a "red fish hole". In discussing this activity, he made the following significant statement:
"And I thought the red fish hole should be about this point, somewhere along in here. When I was looking to the lake at intervals, this particular time, evidentally, I looked too long. But when I came back, that's when I went in the hole."
The plaintiff also gave the following testimony:
"I was driving about 30-35 miles an hour. And I was looking towards the lake ... And at this particular time, I guess I looked toward the lake too long. When I looked back, I'll give you an estimate, I, maybe from here to the wall, I will say 40 feet, 50 feet, say 50 feet, maybe 60 feet, I couldn't believe my eyes and next thing, I think subconsciously, I jumped the brake."
While plaintiff testified tire tracks were apparent on the top of the levee, he admitted it was not a roadway, public or otherwise. Consequently, and contrary to cases involving public highways,[3] as a matter of law plaintiff was not entitled to presume the road ahead of him was safe for travel, and he was charged with the duty of guarding against unusual or unexpected obstructions.
In Desselle v. State, Department of Public Highways, La.App., 328 So.2d 389, at page 393, the court said:
"The driver of a motor vehicle, ... is under a never ceasing duty to maintain a proper lookout and to see what he reasonably should have seen. His failure to see that which he should have seen constitutes negligence...."
In Jackson v. Cook, 189 La. 860, 181 So. 195, at page 197, the Louisiana Supreme Court stated the proposition as follows:
"... the duty of those in charge of motor cars and engines to look ahead and observe never ceases; that what they can see they must see and in legal contemplation they do see; that their failure to see what they could have seen by the exercise of due diligence does not absolve them from liability."
The testimony is somewhat conflicting regarding visibility of the levee on the opposite side of the gap. The indication is that it was of similar color to the top of the crown of the levee on which plaintiff's vehicle was proceeding, and the testimony further indicates no water could be seen in the gap until one was only a few feet from the edge. From the testimony of the plaintiff and experts called for that purpose, it appears plaintiff was traveling at approximately 44 to 45 miles per hour at the time he ran off into the gap. The trial court found "... that the plaintiff could and should have seen the gap in the levee had he been keeping a proper lookout .... and that this negligence is also a proximate cause of the accident."
We agree with the trial court's holding. By plaintiff's own admission, he was proceeding on a levee in violation of a Levee Board warning sign. He admitted dividing his attention alternately between the pathway ahead of him on top of the levee and the lake, where he sought to find a red fish hole. Had plaintiff been driving at a reasonable speed and looking in the direction in which he was proceeding, he would have seen the gap, or at least become aware of the dangerous situation, i.e., that the levee did not extend beyond the gap, in more than sufficient time to bring his vehicle to a halt.[4] On the contrary, the evidence shows plaintiff drove off the edge of the levee at a relatively high speed under all the circumstances. As we have said, his car traveled 55 feet in the air before it struck the ground. Under these circumstances we conclude plaintiff did not follow the simple requirements of driving at a proper speed *617 and of looking and seeing what he could and should have seen.[5]
Plaintiff also argues defendants are liable to it under the theory of strict liability set forth in Civil Code Article 2317 as recognized by the Louisiana Supreme Court in the case of Loescher v. Parr.[6]
In pertinent part, Civil Code Article 2317 provides:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." LSA-C.C. Art. 2317.
The Loescher court set forth three elements of strict liability under Article 2317: (1) The thing which caused the injury was in the care or custody of the defendant; (2) the thing contained a vice or defect (i.e., the thing created an unreasonable risk of injury); and (3) the defect in the thing in fact caused the injury.
Assuming for the sake of argument the doctrine of strict liability applies to non-highway cases, we conclude it does not justify plaintiff's recovery in this case. Here, there was no vice or defect in the thing. The levee was intentionally constructed with the gap to allow passage of the gas transmission lines at the specific instruction of the United States Corps of Engineers. The gap was in the levee for a legitimate public purpose, and any danger it may have presented was patent to anyone exercising reasonable care under the circumstances. Under Loescher the defenses to strict liability are victim fault, third party fault, and an irresistible force. We are not at all certain as to what is meant by "victim fault" or as to what amount of such fault is sufficient to exonerate a defendant in a strict liability situation. However, in the recent case of Dorry v. Lafleur, La., 399 So.2d 559, at pages 560 and 561, the Supreme Court made the following pronouncement:
"Where a plaintiff's negligence contributes to his own damage, there is no reason to ignore his fault in every case simply because the defendant's liability is based on some legal fault other than negligence. Quite to the contrary, the plaintiff's negligence should carry more, not less, consequence when the defendant is strictly liable, but less culpable than the plaintiff.
The idea that contributory negligence is not a defense in a strict liability case was borrowed from the common law.
....
Under what circumstances a plaintiff's contributory negligence should bar his recovery in a strict liability case should be developed on a case by case basis."
The factual basis for our conclusion that plaintiff was guilty of contributory negligence is set forth above. His conduct demonstrates such a disregard for his own safety that, even if a defect existed in the levee, and here we find no defect, it cannot be said the defect caused his injury. On the contrary, plaintiff caused his own injury by his reckless and wanton act of driving on the crown of a levee, without maintaining a sufficient lookout, at a speed inconsistent with his perilous position. We conclude these facts constitute the "victim fault" referred to in Loescher v. Parr, supra.[7]
The final issue, raised by defendants' answer to the appeal, is whether the trial court committed error in casting the successful defendants for costs. In the recent case of Bowman v. New Orleans Public Service Inc., La.App., 410 So.2d *618 270,[8] we made the following pronouncement:
"The basic rule is that all costsboth the prevailing side's and his or her own are to be paid by the party cast, although the court may make an `equitable' different provision for costs."
We find no equitable basis for changing the basic rule in this case, and therefore conclude the judgment must be amended by casting plaintiff for all costs in this proceeding.
For the reasons assigned, the judgment appealed from is amended so as to cast the plaintiff, Merlin Flair, for all costs in both courts. As thus amended, and in all other respects, the judgment is affirmed.
AMENDED AND AFFIRMED.
REDMANN, J., concurs with written reasons.
REDMANN, Judge, concurring.
Defendants were in no way at fault. They owed plaintiff no duty and therefore breached no duty to protect him against injury from driving 44 m. p. h. on a non-road while looking elsewhere than where he was going.
NOTES
[1] Insofar as is shown by the record before us, all named defendants, including T. L. James and excepting only Atlas, appear to have been dismissed by stipulation. However, T. L. James makes no complaint regarding its apparent dismissal and subsequent inclusion in judgment.
[2] The court rejected any distinction between a trespasser as opposed to a licensee or invitee, based on Cates v. Beauregard Electric Cooperative, Inc., La., 328 So.2d 367, and Bourg v. Redden, La.App., 351 So.2d 1300.
[3] See Parker v. Continental Ins. Co., La.App., 341 So.2d 593.
[4] Photographs introduced into evidence also support this conclusion.
[5] The record also contains evidence that the slope of the levee from its crown into the gap was sufficiently shallow that an automobile traveling 20 m. p. h. could have negotiated the slope without mishap. This evidence strongly indicates that under the circumstances plaintiff was traveling much too fast.
[6] La., 324 So.2d 441.
[7] The early case of Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133, indicates contributory negligence is not a defense to strict liability. A similar conclusion was reached by Professor Ferdinand Stone in 12 Civil Law Treatise: Tort Doctrine, § 439, p. 566.
[8] No. 12,572 of the docket of this court, handed down January 22, 1982, and as yet unreported.