644 So.2d 412 (1994)
Robert AMATO
v.
The OFFICE OF the LOUISIANA COMMISSIONER OF SECURITIES, Bridger Eglin in his capacity as Commissioner of Securities, and Harry C. Stansbury in his capacity as Deputy Securities Commissioner.
No. 94-CA-0082.
Court of Appeal of Louisiana, Fourth Circuit.
October 3, 1994.
Rehearing Denied November 15, 1994.
Reasons for Voting to Grant Rehearing Filed November 15, 1994.
*414 James E. Stovall, Jackson and Stovall, Metairie, for plaintiff/appellant.
Adrian F. LaPeyronnie III, and Henry G. Sullivan, Jr., Campbell, McCranie, Sistrunk, Anzelmo & Hardy, Metairie, for defendants/appellees.
Before BARRY, BYRNES and PLOTKIN, JJ.
Reasons for Voting to Grant Rehearing Filed by Justice Plotkin November 15, 1994.
BARRY, Judge.
Robert Amato appeals the dismissal of his suit for a declaratory judgment and damages based on the defendants' alleged failure to comply with procedural due process requirements of the Louisiana Securities Law. We *415 hold that defendants did not comply with the Louisiana Securities Law; however, the commissioner is immune from liability when acting under the Louisiana Securities Law or under color of law. We affirm.

FACTS
Amato is a stock broker and specializes in selling "penny stocks" i.e., stocks under $5.00 a share. He testified that in June 1987 he began working for Brennan Ross Securities which ceased operations in October 1990. On October 31, 1990 Amato resigned and in early November 1990 Brennan Ross submitted a form U-5, Uniform Termination Notice for Securities Industry Registration, to the National Association of Securities Dealers (NASD) to notify them of Amato's termination.
Amato applied for employment with Adams Securities and on November 1, 1990 he completed a form U-4, Form Application For Securities Industry Registration or Transfer. As Amato's prospective employer, Adams Securities submitted the U-4 in November or early December 1990 to register Amato through the NASD. Mr. Daniel Bagdanov, compliance director for Adams Securities, testified by deposition that the U-4 is prepared by the employee but submitted by the firm.[1]
Bagdanov testified that on December 19, 1990 he received a telephone call from Deputy Securities Commissioner Harry Stansbury. The context of that conversation is disputed, but it is agreed that Stansbury told Bagdanov that Amato's U-4 was incomplete because it failed to disclose a Louisiana investigation of Amato.
According to Amato, he did not have notice that he was the subject of an investigation by the Louisiana Securities Commissioner. Stansbury testified that there is no such thing as notice of an investigation and the Louisiana Commissioner's office does not maintain a file on persons under investigation which Amato could check. However, Stansbury believed that Amato should have known of the investigation and reported it after Amato signed for a subpoena directed to Brennan Ross Securities.
Bagdanov stated that Stansbury called him on December 28, 1990 and demanded the immediate withdrawal of Amato's U-4, subject to suspension of Adams Securities' license. That testimony was corroborated by Amato, who testified that Bagdanov relayed that information to him shortly after December 28, 1990. Stansbury denied that he demanded withdrawal of the U-4, but admitted that he told Bagdanov that failure to withdraw the application would result in the denial of Adams Securities' license. Stansbury testified that the options available to Adams Securities were to amend or withdraw the U-4 or risk non-renewal of the firm's license, a disciplinary measure. Adams Securities filed a form U-5 and withdrew Amato's application.
Amato's legal counsel inquired about Amato's application and was told by Stansbury that because Amato's U-4 was withdrawn there was no pending application and nothing for Stansbury to rule upon.
On April 10, 1991 Amato filed this suit for injunctive relief and a declaratory judgment. He amended his petition to pray for damages resulting from the defendants' alleged violation of Amato's due process rights. On April 11, 1991 Amato completed an amended U-4 application and disclosed the Louisiana investigation. The Louisiana Commissioner's Office approved his application shortly thereafter.
The trial court ruled in favor of defendants and Amato appeals. The defendants answer the appeal and contest the trial court's assessment of costs. The issues are whether Amato was denied due process; whether the trial judge erred in his factual findings; and quantum (the trial court rendered judgment for defendants and assessed damages).

DUE PROCESS
Amato argues that he was refused registration without notice or opportunity for a *416 hearing in violation of due process. He contends that Stansbury's insistence upon withdrawal of the U-4 without formal notice effectively refused his registration without affording him an opportunity for a hearing. Defendants respond that the U-4 was voluntarily withdrawn by Adams Securities and there was no pending application until the amended U-4 was submitted in April 1991. Thus, there was no refusal or denial of Amato's registration.
The regulation of securities in Louisiana is governed in part by the Louisiana Securities Law, LSA-R.S. 51:701 et seq. Section 703 controls the application and registration of a securities salesman.
Under Section 703(C)(4), the registration of a salesman automatically terminates from the time of termination of employment. Amato resigned from Brennan Ross October 31, 1990. Brennan Ross ceased operations in October 1990 and submitted the U-5 termination notice in early November 1990. Joseph Long, who was qualified as an attorney and testified for the defense, stated that a salesman's transfer from one broker-dealer to another is usually simultaneous. The NASD Central Registration Depository (a computer filing system) listed the application as a transfer, but there is no evidence that Amato submitted an application for transfer before or simultaneously with the U-5 termination notice. Thus Amato's registration terminated when his employment terminated and Brennan Ross submitted the U-5 termination form on his behalf. His subsequent application was one for re-registration rather than transfer.
Section 703(C)(4) provides that when an individual completes an application for registration,
the commissioner shall register such applicant as a salesman, unless he finds that such applicant is not of good business reputation or does not appear to be qualified by training, experience, or knowledge of the securities business to act as a salesman of securities.
If the commissioner finds that an applicant omitted any material fact required to be stated in the application, that omission may support a finding by the commissioner that the applicant is not of "good business reputation." See §§ 703(E)(2) and 704(A)(1). That would presumably be sufficient ground to refuse to register an applicant under § 703(C)(3).[2]
The Louisiana Securities Law clearly contemplates that an applicant be afforded notice and an opportunity for a hearing prior to refusal of his registration. Section 703(E)(1) provides in pertinent part:
If, after affording an applicant a hearing or an opportunity for a hearing as provided in R.S. 51:716, the commissioner finds that there are sufficient grounds to refuse to register such applicant as provided in this Section, he shall issue an order refusing to register such applicant. [Emphasis added]
Section 716(A) requires:
Before entering an order refusing to register any person under R.S. 51:703, ... the commissioner shall promptly send to such person and, if such person is a salesman to the dealer who employs or proposes to employ such salesman a notice of opportunity for hearing. [Emphasis added]
Section 716(B) provides that the notice and hearing shall be in the manner prescribed in the Administrative Procedure Act, LSA-R.S. 49:950 et seq.
The defendants argue that Sections 703 and 716 are inapplicable because Adams Securities withdrew Amato's U-4 application and there was no refusal of registration. The trial judge apparently agreed and stated in his reasons:
Since Adams Securities withdrew the plaintiff's U4 by filing a U5, it is questionable whether (the Administrative Procedure[s] Act) ever applies.
Stansbury acknowledged that denial could be made only through the statutory process and testified that he used the informal procedure for informational purposes. Joseph *417 Long testified that the informal procedure involving withdrawal of an incorrect application is common across the United States and avoids the formal process of denial.
Neither the Louisiana Securities Law nor the Administrative Procedure Act sets forth an informal procedure for refusal of registration, particularly where, as here, the validity of the underlying facts are in dispute. Compare Louisiana State Board of Medical Examiners v. Bertucci 593 So.2d 798 (La.App. 4th Cir.1992), which recognized the existence of a legislatively mandated informal compliance procedure within the Administrative Procedure Act. In Bertucci this Court considered the requirements for revocation, suspension, annulment or withdrawal of an existing license under LSA-R.S. 49:961(C) and held that, in addition to the basic procedural due process elements of notice and an opportunity for a hearing, § 961(C) required that the licensee be given an opportunity to show compliance prior to the institution of formal proceedings. This Court stated that "(t)he purpose of the additional compliance opportunity of subsection (C) is to `short circuit' the procedure." Id. at 801. Unlike Bertucci, Amato's license was terminated before his U-4 was submitted and § 961(C) is not applicable. However, Bertucci clearly indicates that an informal procedure is appropriate when statutory requirements are met.
An informal procedure under the Louisiana Securities Law must comply with that law. It must be established and promulgated as required by statute and cannot be used to circumvent the statutorily imposed requirements for notice and an opportunity for a hearing which are an integral part of the formal process of denial.
The procedure used by Stansbury was not promulgated as required by law. The Louisiana Securities Law grants to the Commissioner of Securities the power to make "such rules and regulations from time to time as he may deem necessary and proper for the enforcement of (the Louisiana Securities Law)." Such rules and regulations shall be adopted, promulgated and contested as provided in the Administrative Procedure Act. LSA-R.S. 51:710(D).
The Administrative Procedure Act states that each agency which engages in rulemaking shall:
Adopt rules of practice setting forth the nature and requirements of all formal and informal procedures available.
LSA-R.S. 49:952(2).
Stansbury testified that there is no written procedure for reviewing a salesman's license. There is no operations manual and the state's statutes provide the only guide. There is no evidence of a rule of practice setting forth the nature and requirements of the informal procedure utilized by Stansbury to refute the sufficiency of Amato's U-4 application or to obtain its withdrawal. That clearly violates the procedure for adopting rules under the R.S. 51:710 and R.S. 49:952(2).
Moreover, Stansbury's call for the withdrawal of Amato's application for license subject to non-renewal of Adams Securities' license without providing an opportunity to show that the application complied with the requirements exceeded the purported purpose of avoiding the formal process of denial; it circumvented the requirements of notice and opportunity for a hearing statutorily afforded to an applicant prior to refusal of his license, and infringed on Amato's right to procedural due process.

IMMUNITY
Defendants filed an exception of lack of jurisdiction based on immunity and the trial court denied that exception. Defendants also assert the affirmative defense of absolute and qualified immunity based on the Louisiana Securities Law (LSA-R.S. 51:720) and the discretionary acts doctrine (LSA-R.S. 9:2798.1). The judgment does not address immunity and it is only briefly addressed by the parties. This is a case of first impression.
The Louisiana Securities Law provides immunity of the commissioner from suit. LSA-R.S. 51:720 provides:
For any action taken or any proceeding had under this Part or under color of law, the commissioner shall be immune from *418 liability and suit to the same extent that any judge of any court of general jurisdiction in this state would be immune.
Louisiana jurisprudence on judicial immunity mirrors the federal doctrine. Moore v. Taylor, 541 So.2d 378, 381 (La. App.2d Cir.1989). For a judge, an absolute immunity from liability and damages attaches when the judge performs a function that is integral to the judicial process. Johnson v. Foti, 583 So.2d 1210, 1212 (La.App. 4th Cir.1991); see Moore v. Taylor, 541 So.2d at 381. Although immunity does not attach to an administrative (as opposed to judicial) act, Forrester v. White, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), the question of whether an act is judicial in character does not depend on whether it is discretionary or ministerial. Johnson v. Foti, 583 So.2d at 1212. "Immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." Forrester v. White, 484 U.S. at 227, 108 S.Ct. at 544. [Emphasis in original]
Applying these principles to the Securities Commissioner, absolute immunity from damages attaches to an action that is integral to the function of the commissioner's office. The evaluation of an application and registration of a securities salesman are integral to the effective function of the commissioner's office. Moreover, the immunity is justified because of special problems which might arise if the commissioner of such a highly regulated industry as the securities industry were exposed to liability under the Louisiana Securities Law. Compare Forrester v. White, 484 U.S. at 223, 108 S.Ct. at 542, in which the Supreme Court discussed the inhibiting and perverse incentives that result from the threat of liability on some governmental officials. Therefore, we hold that defendants are immune from civil liability.
Pulliam v. Allen, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), cited by the dissent, merely holds that judicial immunity is not a bar to the award of attorney fees under 42 U.S.C. § 1988 (Civil Rights Attorney Fees Awards Act of 1976) where the judge is not immune from the underlying relief on which the award is premised. That underlying relief in Pulliam was not in the form of damages, but rather, § 1983 collateral injunctive relief against a state magistrate who was setting bail for nonjailable misdemeanors. Pulliam has no bearing on our analysis which recognizes limitations on absolute judicial immunity.
Even if defendants were not absolutely immune from liability, the doctrine of qualified immunity shields them from liability. A government official who performs a discretionary function is generally shielded from liability for civil damages insofar as the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Moresi v. Department of Wildlife & Fisheries, 567 So.2d 1081, 1085 (La.1990), quoting Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Malina v. Gonzales, 994 F.2d 1121, 1125-26 (5th Cir.1993).
The qualified immunity inquiry "focuses on whether the contours of the right allegedly violated were sufficiently clear such that a reasonable official would understand that his action violated that right." Malina v. Gonzales, 994 F.2d at 1125-26. An official cannot reasonably be expected to know at the time an action occurs that the law forbade conduct that was not previously identified as unlawful. Moresi v. Department of Wildlife & Fisheries, 567 So.2d at 1085. Compare LSA-R.S. 9:2798.1, which delineates the discretionary acts doctrine for government entities and employees generally and reads in pertinent part:
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policy-making or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
There is no recorded precedent for the withdrawal of an application which the deputy securities commissioner ostensibly believed was inadequate. We hold that Stansbury could not reasonably be expected to know that his action violated Amato's rights. Therefore, his action is shielded by qualified immunity.
*419 The dissent attempts to distinguish Moresi as a federal civil rights action and asserts that the proper test for a qualified immunity is set forth in Rick v. State, Department of Transportation & Development, 630 So.2d 1271 (La.1994); and Simeon v. Doe, 618 So.2d 848 (La.1993), citing Fowler v. Roberts, 556 So.2d 1 (La.1989), on rehearing.
Amato alleged in his Amended Petition "(t)hat said acts of defendants also constitute deprivation of petitioner's civil rights in violation of state and federal constitutional and statutory rights ...," and he argues in brief that he "is entitled to recover damages under 42 U.S.C. § 1983 for deprivation of his civil rights." Moresi is applicable.
The two prong test set forth in Rick and in Simeon is not appropriate in this case. That test is valid for an analysis of the discretionary immunity for public entities and employees under R.S. 9:2798.1, but 51:720 grants to the commissioner immunity "to the same extent that any judge of any court of general jurisdiction in this state would be immune." [Emphasis added]
The Louisiana Supreme Court noted that
The discretionary function exception to state governmental liability established by (9:2798.1) is essentially the same as the exception in the Federal Tort Claims Act [28 U.S.C. § 2680(a)].
Fowler v. Roberts, 556 So.2d at 15.
Section 2680(a) of the FTCA grants a discretionary function exception to liability of a government employee. The FTCA contains a separate section which grants judicial immunity to liability under the Act. Specifically, 28 U.S.C. § 2674 provides in pertinent part:
With respect to any claim under this chapter, the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim, as well as any other defenses to which the United States is entitled.
Rick v. State, Department of Transportation & Development, Simeon v. Doe and Fowler v. Roberts did not involve judicial immunity, and under the statutory mandate the immunity in this case must be defined according to the extent of judicial immunity. It is further noted that the federal cases cited in Rick and in Fowler (in which the Louisiana Supreme Court first enumerated the two prong test for 9:2798.1) did not involve judicial immunity. Rather, the majority were cases brought under the FTCA.[3]

COSTS
Defendants answer the appeal and claim the trial court abused its discretion by ordering each party to bear its own costs.
The trial court has great discretion in awarding costs and may render judgment as it considers equitable. LSA-C.C.P. art. 1920. Earles v. Ahlstedt, 591 So.2d 741 (La.App. 1st Cir.1991). The assessment of costs against a prevailing party has been considered an abuse of discretion absent proof that the prevailing party incurred costs pointlessly or engaged in other conduct that justified the assessment of costs against it. Flair v. Board of Commissioners of Orleans Levee Board, 411 So.2d 614, 618 (La.App. 4th Cir.1982); Polk Chevrolet, Inc. v. Webb, 572 So.2d 1112, 1116 (La.App. 1st Cir.1990), writ den. 575 So.2d 394 (La.1991). Nevertheless, because Amato's first assignment of error on appeal has some merit, we do not disturb the trial court's assessment of costs. See Holdsworth v. Holdsworth, 621 So.2d 71 (La. App.2d Cir.1993).

CONCLUSION
The defendants did not comply with the Louisiana Securities Law and violated Amato's right to due process. However, the commissioner acted in good faith and is shielded from liability under the Louisiana Securities Law or color of law. We pretermit Amato's remaining assignments of error.
AFFIRMED.
BYRNES, J., concurs with reasons.
*420 PLOTKIN, J., concurs in part, dissents in part with written reasons.
BYRNES, Judge, concurs with reasons.
I agree with Judge Barry. The doctrine of absolute immunity is not dead in Louisiana. Moresi v. Department of Wildlife and Fisheries, 567 So.2d 1081, 1084 (La.App.1990).
I share Judge Plotkin's sympathy for Mr. Amato's plight. That he has suffered unjustly as the result of the mishandling of this matter by the office of the Louisiana Securities Commission cannot be denied. Judge Barry's opinion recognizes that. However, that does not give Mr. Amato the right to pursue the Louisiana Securities Commissioner individually. Judge Barry's statement of the facts and the law is correct.
PLOTKIN, Judge, concurs in part and dissents in part with reasons:
This is a case of first impression in Louisiana, which is significant to the jurisprudence interpreting governmental immunity in this state.
I concur in the majority's conclusion that Assistant Commissioner Harry C. Stansbury's actions denied plaintiff Robert Amato his right to due process because he was not afforded an opportunity for a hearing on the issue of the registration of his license to sell securities. However, I disagree with the majority's conclusion that Stansbury is entitled to immunity from liability for his actions.
This case involves an action seeking a temporary restraining order issued to the Louisiana Commissioner of Securities, as well as any person acting or his behalf, from doing the following:
continuing to deny re-registration or registration to Robert Amato as a Series 7 Securities Representative in the State of Louisiana; and further ordering the Commissioner of Securities to issue a sales license as a Series 7 Securities Representative to Robert Amato within forty-eight (48) hours of receiving an application for same from a licensed broker/dealer; further to direct the Commissioner of Securities to so inform Mr. Dan Bagdanov of Adams Securities of same so that Robert Amato can proceed with his duties and employment with Adams Securities; and further to direct that Deputy Commissioner Stansbury be ordered to cease and desist from taking any official or unofficial action of any kind in this matter or in regard to Robert Amato's business as a Series 7 Securities Representative.
Amato also sought a declaratory judgment in the form and substance of the temporary restraining order. Amato later amended his petition, seeking damages resulting from the denial of his due process rights. The trial court dismissed the suit.
Despite finding that Stansbury violated Amato's constitutional due process rights to notice and a hearing prior to denial of his application for re-registration, the majority affirms the trial court's dismissal of Amato's suit. The majority's conclusion is based primarily on its finding that Stansbury, as deputy commissioner of securities, is entitled to absolute immunity from suit under LSA-R.S. 51:720, which equates the immunity due the securities commissioner with judicial immunity. In so doing, the majority bases its decision on an issue which was treated insignificantly by the parties, since it is barely addressed in the briefs filed by the parties in this court.
Although LSA-R.S. 51:720 was passed by the Louisiana legislature in 1985, no reported cases have interpreted its provisions. That fact notwithstanding, the majority has chosen to interpret the provision, which expressly provides that the Securities Commissioner "shall be immune from liability and suit to the same extent that any judge of any court of general jurisdiction in this state would be immune," very broadly and in such a way as to extend absolute immunity for all types of suits to virtually every employee of the Department of Securities.
For the reasons set forth below, I believe that the majority's conclusions on this issue are specious. First, the majority incorrectly holds that the Securities Commissioner and his employees are entitled under LSA-R.S. 51:720 to absolute immunity. However, a close study of the caselaw reveals that even the traditional judiciary is no longer entitled to absolute immunity from all types of suits. *421 Significantly, the United States Supreme Court held specifically in Pulliam v. Allen, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), that members of the judiciary are not immune from suits for injunctive relief or from being held liable for attorney's fees incurred in seeking that injunctive relief. Although the instant suit does, by amendment, involve a request for monetary damages, it primarily seeks a temporary restraining order and a declaratory judgment, both of which would seem to fall within the exceptions to the judicial immunity doctrine for injunctive relief as established by Pulliam.
Further, I see grave problems with the legislature's enactment of specialized legislation extending judicial immunity to a bureaucratic office of the executive branch, such as the Securities Commissioner. Traditionally, executive branch department heads are primarily considered to be makers and administrators of policy. As such, members of the executive branch of government have traditionally been extended only qualified immunity, as evidenced by LSA-R.S. 9:2798.1. The difference between absolute immunity and qualified immunity is at absolute immunity is a complete bar against suit for damages arising from a judge's conduct, while qualified immunity is an affirmative defense that protects government officials performing discretionary functions if their conduct does not violate clearly established statutory or constitutional rights known to all reasonable persons.
Further, I believe that the constitutionality of LSA-R.S. 51:720 under the provisions of La. Const. art. XII § 10(A) is questionable. That constitutional article provides as follows:
Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
In Chamberlain v. State DOTD, 624 So.2d 874 (La.1993), the Louisiana Supreme Court found that the legislature's power to enact laws which abrogate the effect of the abolition of state sovereign immunity evidenced by La. Const. art. XII, § 10(A) are subject to constitutional challenges. In that case, the court found a cap on damage awards against governmental agencies unconstitutional, stating as follows:
[T]he correct construction of Section 10(A) is that it implicitly inhibits the legislature's power to restrict recoverable tort damages.
Id. at 887.
The Chamberlain decision noted that La. Const. XII § 10(A) creates a constitutional right to sue the state in tort and held that that right cannot be legislatively curtailed. Thus, said the Supreme Court, La. Const. XII § 10(A) removed the legislature's former discretionary right to consent to suit and liability in tort, and instead "reserved that right inviolate to the people, making that right a concrete one, beyond the legislature's reach." Id. The cap on tort damage awards was proscribed by that constitutional provision, the court said, because "decreasing recovery from full compensation to a maximum ceiling partially resurrects immunity." Id. The underpining of this holding is that the legislature is not allowed to erode the constitutional provision eliminating the sovereign immunity doctrine by passing legislation which would gradually lead to the resurrection of that doctrine. LSA-R.S. 51:720 is unquestionably a partial resurrection of sovereign immunity.
I recognize that the issue of the constitutionality of LSA-R.S. 51:720 was not raised by the parties in the instant case; however, as I stated previously, the parties treated the immunity issue as very insignificant. Since the majority has chosen to base its entire decision on the finding that the commissioner and his employers are entitled to absolute immunity from Amato's suit, I feel it is necessary to raise this important issue, especially in light of the long-term effects of the decision.
I also believe that the provisions of LSA-R.S. 51:720 conflict with the provisions of LSA-R.S. 9:2798.1, which was designed and intended to apply to all public officials in the executive branch of Louisiana state government. I see LSA-R.S. 51:720 as special interest legislation which should not be allowed to "trump" the provisions of LSA-R.S. 9:2798.1, which applies to all other agencies *422 on the same level as the Securities Commissioner.
Thus, I would find that Stansbury is not entitled to absolute immunity from Amato's suit and would consider only whether Stansbury is entitled to qualified immunity under the current legislative and jurisprudential interpretations of LSA-R.S. 9:2798.1, which codifies the public duty/private duty doctrine. That statute provides, in pertinent part, as follows:
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policy-making or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policy-making or discretionary power exists; or
(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
The Louisiana Supreme Court has established the following two-part test for determining whether a public official's actions are entitled to qualified immunity under the above provision:
First, a court must determine whether the action is a matter of choice. If no options are involved, the exception does not apply. If the action involves selection among alternatives, the court must determine whether the choice was policy based. Decisions at an operational level can be discretionary if based on policy.
Rick v. State, DOTD, 630 So.2d 1271, 1276-77 (La.1994), citing Berkovitz by Berkovitz v. U.S., 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); U.S. v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). See also Simeon v. Doe, 618 So.2d 848, 852-53 (La.1993), Fowler v. Roberts, 556 So.2d 1 (La.1989) (On rehearing). I believe that consideration of the facts of this case under the two-part test quoted above makes it clear that Stansbury's actions are not entitled to immunity under LSA-R.S. 9:2798.1.
In fact, Stansbury's actions do not even pass the first prong of the Fowler/Simeon/Rick test, which focuses on whether his actions are specifically prescribed by a statute, regulation, or policy. LSA-R.S. 51:716(A) specifically prescribes the actions of the securities commissioner under the circumstances provided by this case, providing, in pertinent part, as follows:
Before entering an order refusing to register any person under R.S. 51:703, and after the entering of any order for revocation or suspension, the commissioner shall promptly send to such person and, if such person is a salesman to the dealer who employs or proposes to employ such salesman a notice of opportunity for hearing.
Further, the procedure for serving notice of the opportunity for hearing is established by the Administrative Procedure Act, specifically LSA-R.S. 49:961(C), which provides, in pertinent part, as follows:
No revocation, suspension, annulment, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gives notice by mail to the licensee of facts or conduct which would warrant the intended action and the licensee is given an opportunity to show compliance with all lawful requirements for the retention of the license.
See also Louisiana State Board of Medical Examiners v. Bertucci, 593 So.2d 798 (La. App. 4th Cir.1992).
Thus, Stansbury did not have the discretion to deny Amato's license without giving Amato himself notice and opportunity to be heard. Despite that fact, Stansbury failed to fulfill the requirements of the statute which prescribed his conduct under the circumstances of this case. Although Stansbury gave notice to Amato's prospective employer via a telephone call, Stansbury did not give notice to Amato himself. As a result of Stansbury's failure to follow these statutory requirements, Amato was denied his right to due process. The statutory requirements do not afford Stansbury the discretion to give notice only to Amato's prospective employer and not to Amato himself.
*423 Since Stansbury's actions do not meet even the first prong of the Fowler/Simeon/Rick test, there is no need to consider the second prong of the test. However, I would note that no social, economic, or political policy prevented Stansbury from fulfilling the requirements of the statute requiring him to give Amato notice and opportunity for hearing prior to the denial of his application for registration. Thus, the majority was clearly wrong in holding that Stansbury was entitled to qualified immunity from liability for his actions under LSA-R.S. 9:2798.1.
The majority opinion fails to analyze Stansbury's actions according to the two-part test established by Fowler and reaffirmed in Simeon and Rick, relying instead on language from a 1990 Louisiana Supreme Court case which dealt with immunity in a federal civil rights action, Moresi v. Department of Wildlife & Fisheries, 567 So.2d 1081, 1085 (La.1990). Using the Moresi case, the majority holds that the pertinent inquiry is whether the official could reasonably be expected to know that the law forbade his conduct. The majority then concludes that Stansbury could not have been expected to know that his actions violated Amato's rights because of the lack of any recorded precedent for the withdrawal of an application which he believed was inadequate.
I disagree with that conclusion. As noted above, Stansbury's actions of notifying Amato's prospective employer of the fact that his application was allegedly inadequate because of his failure to report an investigation which he knew nothing about were prescribed by the statutes governing the Office of the Securities Commissioner. Thus, I believe that Stansbury would not be entitled to immunity even under the Moresi test.
Accordingly, I would find that Stansbury is not immune from liability for any damages suffered by Amato as a result to the unlawful denial of his application for registration. Public officials who negligently perform their duties are subject to personal liability, even in the absence of malice or bad faith. See Akins v. Jefferson Parish, 529 So.2d 27, 31 (La.App. 5th Cir.), rev'd in part on other grounds 533 So.2d 970 (La.1988), rev'd on reh'g 539 So.2d 44 (La.1989). Thus, I would reverse the trial court judgment and remand the case to the district court for determination of damages.

ADDITIONAL REASONS FOR GRANTING REHEARING

[Filed Nov. 15, 1994]
I would grant rehearing for the reasons discussed in my dissent to the original opinion issued by this court. Additionally, I would grant rehearing because the Exception of Lack of Jurisdiction filed by the defendants citing the immunity of the securities commissioner provided by LSA-R.S. 51:720 seeks dismissal of the complaint only in the names of the "Commissioner of Securities (Fred Dent, Bridger Eglin, Larry Murray)," and not in the name of Deputy Securities Commissioner Harry Stansbury. Thus, Stansbury would not be entitled to dismissal under the immunity provisions even if it were valid and legal since he failed to plead that defense.
NOTES
[1] Bagdanov did not testify at trial. References to Bagdanov's testimony refer to his deposition which was submitted in evidence.
[2] Stansbury acknowledged on cross examination that the Louisiana Securities Law does not specifically require that a pending state investigation be reported on an application. See LSA-R.S. 51:703(C)(1). However, the U-4 form does require that an investigation be reported.
[3] The cases relied upon by the dissent are all distinguished above and are inapplicable. The constitutionality of LSA-R.S. 51:720 is not before this Court.