STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 11-1487


BRENT J. MENARD

VERSUS

LOUISIANA DEPARTMENT OF HEALTH & HOSPITALS, ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 86038-E
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and Billy Howard
Ezell, Judges.


                                                    AFFIRMED.

Carol Stookey Hunter
Assistant Attorney General
556 Jefferson St., 4th Floor
Lafayette, LA 70501
(337) 262-1700
COUNSEL FOR DEFENDANTS/APPELLEES:
        State of Louisiana, Department of Health & Hospitals
        Donna Poirrier

W. Glenn Soileau
Jacques P. Soileau
P. O. Box 344
Breaux Bridge, LA 70517
(337) 332-4561
COUNSEL FOR PLAINTIFF/APPELLANT:
        Brent Menard

**EZELL, Judge.**

Brent Menard appeals a trial court's grant of summary judgment in favor of the Louisiana Department of Health and Hospitals (DHH) and its employee, Donna Poirrier. For the following reasons, we affirm the judgment of the trial court.

## FACTS

Mr. Menard owns Menard's Sewer & Drain Services and installs sewer systems. In August 2005, Mr. Menard installed a sewer system for Angela and Brandon Bodin in Vermilion Parish for their mobile home. Shortly after Mr. Menard installed the system, the Bodins called him complaining that the system was backing up after the plumbing was installed.

During a deposition, Mr. Menard testified that he went to investigate the matter and he noticed that the field line had been driven over, crushing it and causing it to collapse. He ran his camera through the line to confirm that it had been crushed. Mr. Menard testified that he told Mrs. Bodin it would cost a certain amount of money to repair and she indicated that she wanted him to repair it. Mr. Menard also told Mrs. Bodin that he could not get to it quickly because he had a lot of other work to do.

On October 14, 2005, Mr. Menard received a "Notice of Violation" letter from Donna Poirrier indicating that she had inspected the Bodins' property on September 20, 2005, and that she had contacted him by phone. Ms. Poirrier is the onsite wastewater program coordinator for Acadian Region IV for the DHH. She reinspected the property on October 14, 2005, and found that the field line was not draining properly because it was draining uphill rather than following gravity flow. She also noted that an aerator had not been connected to the mechanical unit. Ms. Poirrier sent this same letter again to Mr. Menard on October 26, 2005.

1

Ms. Poirrier spoke to Mr. Menard on the phone on November 3, 2005, and he indicated that he had connected the aerator. In a letter dated November 8, 2005, addressed to Mr. Menard, Ms. Poirrier explained that she had tried talking to him about the drain line issue but he hung up. She inspected the property another time on November 4, 2005; Ms. Poirrier performed another inspection of the sewage system, observing that the aerator had been connected but that the drain line was still not draining properly. The letter further indicated that a meeting was going to be held at the Vermilion Parish Health Unit on Wednesday, November 16, 2005, at 10:00 a.m. to discuss his noncompliance with the Louisiana Sanitary Code. Mr. Menard was asked to attend the meeting. Ms. Poirrier also indicated that Mr. Menard's continued failure to comply with the code may result in suspension or revocation of his license to install individual sewerage systems.

An additional letter was mailed to Mr. Menard on December 21, 2005, noting that Mr. Menard failed to attend the conference. Ms. Poirrier also remarked that Mr. Menard had still not corrected the situation at the Bodins' residence. The letter further stated that Mr. Menard had failed to correct an installation at an additional address. Ms. Poirrier then informed Mr. Menard that she was going to recommend that Mr. Menard's license not be renewed.

Ms. Poirrier sent yet another letter to Mr. Menard on February 9, 2006, indicating that she had not received any information from him that he had remedied the code violations. She explained that his license expired on January 31, 2006, and that renewal would be withheld until he notified the office of compliance.

Stanley Clause, administrator of the onsite wastewater program, wrote a letter to Mr. Menard on March 8, 2006, indicating that he had received a recommendation not to renew his installer's license due to a deficient system

2

installation. Mr. Clause indicated that Mr. Menard's license renewal would not be processed, rendering it suspended. Mr. Clause informed Mr. Menard that renewal of his license would be processed once he is deemed in compliance with the sanitary code.

Pursuant to La.Admin. Code tit. 51 § 735(F), an administrative hearing was held "to determine whether sufficient grounds for revocation exist." The hearing was held on April 10, 2006, and on April 20, 2006, a decision was rendered. The administrative law judge issued the following ruling:

> Therefore, the Department has the initial burden of proving that that [sic] a licensee committed a violation of the state sanitary code. The violation at issue is the improper slope of discharge lines. The Department's witness testified, under cross, that she did not know whether Respondent improperly installed the discharge lines. Further, there was no showing that Respondent had an obligation under the sanitary code to correct the slope of the discharge lines; such that his failure to repair it would in itself constitute a violation of the sanitary code. Nor was there any showing that Respondent had otherwise committed a violation of the state sanitary code.
>
> Accordingly, I find the Department has failed to carry its burden of proof under LAC 51:XIII.735(F).

The administrative law judge then denied the DHH's proposed revocation of Mr. Menard's license.

On April 24, 2006, Mr. Clause wrote a letter to Mr. Menard informing him that his license was temporarily restored pending receipt of his renewal application by May 24, 2006.

On November 27, 2006, Mr. Menard filed suit against the DHH and Ms. Porrier alleging wrongful seizure of his license. On February 25, 2011, the DHH and Ms. Poirrier filed a motion for summary judgment claiming quasi-judicial immunity, discretionary immunity, and that Mr. Menard cannot carry his burden of proof at trial.

A hearing on the matter was held on August 22, 2011. The trial court granted the motion for summary judgment, and judgment was signed on September 8, 2011. Mr. Menard then filed the present appeal.

**SUMMARY JUDGMENT**

Mr. Menard asserts that the DHH and Ms. Poirrier negligently suspended his license and are not entitled to the benefit of quasi-judicial or qualified immunity. Mr. Menard claims that there is ample evidence establishing that the Defendants acted negligently and/or intentionally in failing to properly and adequately inspect the claim of the Bodins and for wrongfully refusing to renew his installer's license.

"Appellate courts review summary judgment *de novo,* using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, and in the light most favorable to the non-movant." *Yokum v. 615 Bourbon Street, L.L.C. 07-1785,* p. 25 (La. 2/26/08), 977 So.2d 859, 876 (citing *Suire v. Lafayette City–Parish Consol. Gov't.,* 04–1459 (La. 4/12/05), 907 So.2d 37). Louisiana Code of Civil Procedure Article 966(A)(2) states "[t]he summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action," and this "procedure is favored and shall be construed to accomplish these ends." "[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact," then judgment shall be granted as a matter of law in favor of the mover. La.Code Civ.P. art. 966(B) and (C). Defendants, as the movants herein, bear the initial burden of proof. *See* La.Code Civ.P. art. 966(C)(2). If Defendants successfully meet their burden, then the burden shifts to Plaintiff to present factual support adequate to establish that he will be able to satisfy his evidentiary burden at trial. *Id.* If, however, Plaintiff fails to produce the factual support necessary to establish that he will be able to satisfy

4

his evidentiary burden of proof at trial, then there is no genuine issue of material fact. *Id.*

Quasi-Judicial Immunity

The doctrine of judicial immunity extends absolute immunity to a judge from liability for all acts performed within his or her subject matter jurisdiction unless he or she acted outside his or her judicial capacity and his or her actions were based on malice or corruption. *Viator v. Miller*, 04-1199 (La.App. 3 Cir. 4/27/05), 900 So.2d 1135.

Quasi judicial is defined by BLACK'S LAW DICTIONARY 1121, (5th ed. 1979), as:

> A term applied to the action, discretion, etc., of public administrative officers or bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature.

In *Amato v. Office of Louisiana Commissioner of Securities*, 94-82 (La.App. 4 Cir. 10/3/94), 644 So.2d 412, *writ denied*, 94-3024 (La. 2/3/95), 649 So.2d 410, *cert. denied*, 515 U.S. 1144, 115 S.Ct. 2582 (1995), the court discussed whether the actions of a deputy securities commissioner with the Louisiana Securities Commission was entitled to absolute immunity. The fourth circuit recognized that absolute immunity from liability and damages for a judge attaches when the judge performs a function that is integral to the judicial process. The court noted that "[a]lthough immunity does not attach to an administrative (as opposed to judicial) act,... the question of whether an act is judicial in character does not depend on whether it is discretionary or ministerial." *Id.* at 418. The fourth circuit further noted that "'[i]mmunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches.'" *Id.* (quoting *Forrester v. White*, 484 U.S. 219, 227, 108 S.Ct. 538, 544 (1988)) (emphasis in original). The fourth

5

circuit then went on to hold that the securities commissioner was absolutely immune from damages for refusing a stockbroker's registration.

Later, in *Durousseau v. Louisiana State Racing Commission*, 98-442, p. 4 (La.App. 4 Cir. 12/9/98), 724 So.2d 844, 846, *writ denied*, 99-34 (La. 2/12/99), 738 So.2d 582, the court recognized that, "[b]ecause many administrative boards and commissions have a quasi-judicial function when they adjudicate matters like licenses, . . . it has become common to recognize quasi-judicial immunity, equivalent to judicial immunity, for such boards and commissions (and their individual members) for their actions taken and decisions made in their adjudicative role."

In *Talbert v. Louisiana State Board of Nursing*, 03-258 (La.App. 1 Cir. 12/31/03), 868 So.2d 729, the court found that the Louisiana State Board of Nursing was acting in its administrative adjudicatory capacity in suspending a nursing license. The suspension was eventually lifted by the full board after a hearing. The court explained that, "[e]xtending quasi-judicial immunity to the Board's administrative adjudicatory decisions preserves the independence of judgment of the adjudicators by foreclosing any possibility of intimidation or deterrence through the threat or actuality of suits for damages." *Id.* at 731.

As an installer of sewer systems, Mr. Menard is required to obtain a license from the DHH through the nearest parish health unit. La.Admin. Code tit. 51, § 735(B) and (D). Furthermore, "a license may be suspended upon determination by the state health officer of non-compliance with the requirements of this code." La.Admin. Code tit. 51, § 735(F).

The evidence in the record indicates that Ms. Poirrier investigated the situation at the Bodin property and requested that Mr. Menard connect the aerator and correct the drainage issue. Mr. Menard did connect the aerator but failed to

correct the drainage issue. After reinspection and repeated requests to discuss the issue, Ms. Poirrier recommended suspension of Mr. Menard's license due to violations of the sanitary code.

Mr. Menard argues that quasi-judicial immunity does not apply because he was intentionally deprived a living when the DHH continued to post notices that he could not install septic systems after his license was reinstated. The only evidence in the record indicates that this notice, which includes the names of other installers, was still in the office the day that notice was received that Mr. Menard's license had been reinstated. This is not sufficient evidence to establish malice on the part of Ms. Poirrier or the DHH. We find that the DHH and Ms. Poirrier are entitled to absolute quasi-judicial immunity when making a judgment call as to whether or not to suspend a license for violations of the Sanitary Code.

Qualified Immunity

Even if Ms. Poirrier and the DHH were not immune from liability, the doctrine of qualified immunity shields them from liability. Qualified immunity protects government officials performing discretionary functions. *McManus v. State, Dept. of Wildlife and Fisheries*, 09-1158 (La.App. 3 Cir. 3/10/10), 33 So.3d 412, *writ denied*, 10-816 (La. 6/18/10), 38 So.3d 323.

Qualified immunity for discretionary acts of public entities and their employees is provided for in La.R.S. 9:2798.1:

> A. As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.
>
> B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts

7

when such acts are within the course and scope of their lawful powers and duties.

C. The provisions of Subsection B of this Section are not applicable:

(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or

(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

D. The legislature finds and states that the purpose of this Section is not to reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created codal articles and laws and also to assist in the implementation of Article II of the Constitution of Louisiana.

The supreme court explained qualified immunity for discretionary acts in

*Simeon v. Doe,* 618 So.2d 848, 852-53 (La.1993), as follows:

In *Fowler v. Roberts*, 556 So.2d 1 (La.1989) (on rehearing), we set out a two step inquiry, derived from *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), to determine whether the policy-making or discretionary acts doctrine applied in a specific fact situation. First, a court must determine whether a statute, regulation or policy specifically prescribes the course of action for the employee or agency to follow. If so, there is no discretion on the part of the employee or agency and therefore no immunity. If a court determines discretion is involved, the court must then determine whether that discretion "is the kind which is shielded by the exception, that is, one grounded in social, economic or political policy." *Fowler*, 556 So.2d at 15. If it is, then the doctrine applies and the employee or agency is insulated from liability; if it is not, the employee or agency is liable for any negligence.

In the present case, the law only provides that a state health officer can suspend a license upon determination that there has been non-compliance with the requirements of the sanitary code. La.Admin. Code tit. 51, § 735(F). There are no specific procedures to follow for making this determination. Therefore, we find that Ms. Poirrier's actions were discretionary and that she and the DHH are entitled to qualified immunity.

8

For the above reasons, we find that the trial court was correct in granting the DHH's and Ms. Poirrier's motion for summary judgment and dismissing Mr. Menard's claims against them.  Costs of this appeal are assessed to Brent Menard.

**AFFIRMED.**