647 So.2d 1131 (1994)
The PRUDENTIAL INSURANCE COMPANY OF AMERICA
v.
CC & F BATON ROUGE DEVELOPMENT COMPANY, New CC & F Baton Rouge Partnership, Howard Francis Murphy, Kathleen McCartney Huettner and Carl E. Kloos, as Testamentary Executor of the Succession of Magda Altheim.
No. 93 CA 2074.
Court of Appeal of Louisiana, First Circuit.
October 7, 1994.
Opinion Denying Rehearing December 27, 1994.
*1133 Patrick E. Henry, Patricia McMurray, New Orleans, for plaintiff-appellant The Prudential Ins. Co. of America.
Charles Stern, Jr., New Orleans, for defendants-appellees CC & F Baton Rouge Development Co., New CC & F Baton Rouge Partnership.
William Steffes, Baton Rouge, for defendant-appellee Howard Francis Murphy.
Michael Perry, Baton Rouge, for defendants-appellees Carl E. Kloos, Executor of Succession of Magda Altheim, Kathleen M. Huettner.
Carl Kloos, in pro. per.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment sustaining an exception pleading the objection of no cause of action and dismissing an action against two defendants.

BACKGROUND
On May 19, 1972, American Holding Corporation, a Louisiana corporation, as lessor, entered into a lease with CC & F Baton Rouge Development Co., Inc. (CC & F, Inc.), a Delaware corporation, as lessee, for the lease of a portion of certain immovable property known as One American Place located in Baton Rouge, Louisiana.[1] The lease was recorded on May 19, 1972, in the Conveyance Records in the Parish of East Baton Rouge as Original 26, Bundle 7957. On that same day, American Holding Corporation entered into a second lease with CC & F, Inc. for another portion of the immovable property known as One American Place.[2] The lease was recorded on May 19, 1972, in the Conveyance Records in the Parish of East Baton Rouge as Original 27, Bundle 7957.
On October 1, 1973, the two leases were assigned by CC & F, Inc. to CC & F Baton Rouge Development Company (CC & F), a Massachusetts limited partnership. The assignment of lease was recorded in the Conveyance records in the Parish of East Baton Rouge as Original 25, Bundle 8605.
On November 20, 1974, CC & F executed a fixed monthly payment note payable to the order of The Prudential Insurance Company of America (Prudential) for a principal sum of $12,850,000.00. The note was secured by and paraphed "Ne Varietur" for identification with an act of mortgage on the leasehold interest in the One American Place property.[3]
*1134 On November 20, 1974, CC & F, as the owner of the leasehold interest in the One American Place property, executed an assignment and pledge of lease, thereby assigning, pledging, and transferring to Prudential the leases on One American Place between American Holding Corporation and CC & F.[4] On that same day, CC & F executed a conditional assignment of rentals, thereby assigning, transferring, and conveying to Prudential all of the rents, issues, and profits of the mortgaged property.[5] The assignment of rentals became operative upon any default by CC & F under the terms of the note and mortgage.
Thereafter, on March 10, 1977, CC & F assigned 76% of its undivided leasehold interest in the One American Place property to CC & F, Inc.,[6] and numerous individuals.[7] The assignment was recorded in the Mortgage and Conveyance records in the Parish of East Baton Rouge as Original 42, Bundle 9205. On that same date, CC & F also transferred 24% of its undivided leasehold interest in the One American Place property to Baton Rouge Development Company, a Massachusetts limited partnership. The assignment was recorded in the Mortgage and Conveyance records in the Parish of East Baton Rouge as Original 43, Bundle 9205.
On March 11, 1977, Baton Rouge Development Company assigned its 24% undivided leasehold interest in the One American Place property to Cabot, Cabot & Forbes Buffalo, Inc., a Delaware corporation. The assignment was recorded in the Mortgage and Conveyance records in the Parish of East Baton Rouge as Original 44, Bundle 9205. Three days later, on March 14, 1977, Cabot, Cabot & Forbes Buffalo, Inc. and certain individuals assigned their leasehold interest in the One American Place property to New CC & F Baton Rouge Partnership, a Massachusetts limited partnership, (New CC & F).[8] *1135 The assignment was recorded in the Mortgage and Conveyance records in the Parish of East Baton Rouge as Original 45, Bundle 9205.
On July 19, 1978, New CC & F assigned to CC & F, Inc. and Cabot, Cabot & Forbes Buffalo, Inc. an undivided 59.1% leasehold interest in the One American Place property; CC & F, Inc. owning an undivided 36.1% leasehold interest and Cabot, Cabot & Forbes Buffalo, Inc. owning an undivided 23% leasehold interest.[9] On July 19, 1978, CC & F, Inc. assigned to Barbara McCartney Murphy an undivided 7.691% leasehold interest in the One American Place property. On that same day, CC & F, Inc. assigned to Kathleen McCartney Huettner an undivided 7.691% leasehold interest in the One American Place property.
On July 19, 1978, Cabot, Cabot & Forbes Buffalo, Inc. assigned to Barbara McCartney Murphy an undivided 11.5% leasehold interest in the One American Place property. On that same day, Cabot, Cabot & Forbes Buffalo, Inc. assigned to Kathleen McCartney Huettner an undivided 11.5% leasehold interest in the One American Place property.
On July 19, 1978, CC & F, Inc. assigned to Barbara McCartney Murphy an undivided 11.618% leasehold interest in the One American Place property. On that same day, CC & F, Inc. assigned to Magda Altheim an undivided 9.1% leasehold interest in the One American Place property.
Thereafter, the leasehold interest in the One American Place property was held as follows:

New CC & F 40.9%
Barbara McCartney Murphy 30.809%
Kathleen McCartney Huettner 19.191%
Magda Altheim 9.1%
CC & F, Inc. -0-
Cabot, Cabot & Forbes Buffalo,
 Inc. -0-

On December 12, 1985, Prudential entered into an act of assignment of mortgage and endorsement of mortgage note and related security documents with Bankers Life Company (Bankers) wherein Prudential transferred to Bankers its interest in the note, act of mortgage, conditional assignments of rentals, and assignment and pledge of leases executed by CC & F on November 20, 1974.
On April 1, 1986, New CC & F, Murphy, Huettner, and Altheim executed an amendment of the act of mortgage, acknowledging that their successors in interest executed the fixed monthly mortgage note and mortgage, that Prudential had misplaced or lost the note, and that Prudential had requested the mortgagors to acknowledge their continued indebtedness and to execute a substitute note for the same terms and conditions, bearing the same date, so that Prudential could use such note as evidence of the debt in its favor and as a legal instrument for the enforcement of its legal remedies if necessary. Prudential and Bankers intervened in the amendment as accepted and agreed to the amendment. American Holding Corporation also intervened to acknowledge the amendment and ratify the intervention contained in the act of mortgage. Thereafter, Bankers, New CC & F, Murphy, Huettner, and Altheim entered into an amendment and modification of promissory note and act of mortgage and consent to lease amendments and secondary financing. In the amendment, Bankers consented to various amendments to the leases regarding the One American Place property. Moreover, the mortgagors and Bankers agreed to numerous modifications in the note and mortgage, including the interest rate and resulting monthly payment, and the inclusion of an acceleration clause.
By judgment of possession dated July 25, 1990, Howard Francis Murphy was recognized as the sole legatee of Barbara McCartney Murphy and, as such, was placed in *1136 possession of her undivided 30.08% interest in the leasehold interest in the One American Place property.[10]
Thereafter, on June 18, 1991, Principal Mutual Life Insurance Company, formerly known as Bankers, entered into an act of assignment of mortgage and endorsement of mortgage note and related security documents with Prudential.

FACTS
On March 6, 1992, Prudential filed suit on the promissory note. Named as defendants were: CC & F, New CC & F, Huettner, Murphy, and Carl E. Kloos.[11] In addition to requesting acceleration of all monies due under the note, Prudential requested recognition of the validity of its mortgage and assignment and pledge of leases and conditional assignment of rentals. Thereafter, on June 19, 1992, Prudential amended its petition to request the issuance of a writ of sequestration of the mortgaged property and the rental payments accruing therefrom. In its amended petition, Prudential further alleged that, pursuant to a conditional assignment of rentals, CC & F assigned and transferred to Prudential all rents accruing from the mortgaged property, which became operative upon default of the note. By order dated June 19, 1992, the mortgaged property was sequestered. Thereafter, by order dated June 26, 1992, One American Place Management, Inc. was appointed interim keeper of the sequestered property, and all rent or lease payments due by the tenants of the One American Place Management, Inc. Corporate Realty, Inc. subsequently replaced One American Place Management, Inc. as keeper.
On July 7, 1992, CC & F and New CC & F filed answers to Prudential's petitions, asserting numerous defenses. Thereafter, on July 17, 1992, Huettner and Kloos answered Prudential's petitions. On September 8, 1992, Murphy filed an answer to Prudential's petitions.
Pursuant to a motion for summary judgment filed by Prudential and a stipulation filed on January 13, 1993, on February 26, 1993, the trial court rendered judgment in favor of Prudential and against CC & F, New CC & F, Murphy, Huettner, and Kloos, recognizing the default under the note and the unpaid balance of $10,992,623.23, together with interest of $583,521.84 through February 10, 1992, per diem interest of $3,011.68 until paid, and attorney's fees of $75,000.00, as well as recognizing the validity and enforceability of the mortgage. The judgment expressly provided that the judgment could be enforced solely against the mortgaged property, but also expressly recognized Prudential's rights to seek further enforcement of other claims against the defendants.[12]
On February 18, 1993, Prudential filed a second supplemental and amended petition, alleging that the funds which were the subject of the assignment and pledge of the lease and conditional assignment of rentals in favor of Prudential had been distributed to or for the benefits of the defendants. Prudential, alternatively, contended that, if defendants had no personal liability, which it denied, then Prudential was without a remedy and was entitled to recover such funds under the theory of unjust enrichment.
On March 4, 1993, Kloos and Huettner filed a peremptory exception pleading the objection of no cause of action. CC & F and New CC & F filed answers to Prudential's second amended petition. In the answers, CC & F and New CC & F admitted receiving distributions of $15,000.00 from the operation of the One American Place property on July 16, 1992, but denied all other allegations.
*1137 On May 7, 1993, the trial court, after a hearing, rendered judgment on the exception pleading the objection of no cause of action. The trial court judgment was rendered in favor of Kloos and Huettner and against Prudential, dismissing Prudential's demands against Kloos and Huettner for a money judgment. From this adverse judgment, Prudential appealed, assigning the following specifications of error:
1. The trial court erred in granting the exception of no cause of action for personal liability effectively holding that defendants Huettner and Kloos cannot be held personally liable to Prudential for receipt of funds subject to the Assignment of Rentals in favor of Prudential, because such liability does not arise out of this note or the mortgage, but out of the conditional assignment of rentals, with regard to which no agreement as to personal liability was made.
2. The trial court erred in not finding that Prudential stated a cause of action for unjust enrichment.

EXCEPTION PLEADING THE OBJECTION NO CAUSE OF ACTION
The function of an exception pleading the objection of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleadings. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1235 (La. 1993); Stafford Construction Company, Inc. v. Terrebonne Parish School Board, 612 So.2d 847, 850 (La.App. 1st Cir.1992), writ denied, 614 So.2d 82 (La.1993). For purposes of the validity of the objection, all well-pleaded allegations of fact are accepted as true, and the exception must be decided upon the face of the petition and any attached documents. Sevarg Co., Inc. v. Energy Drilling Co., 591 So.2d 1278, 1280-81 (La. App. 3rd Cir.1991), writ denied, 595 So.2d 662 (La.1992); Williams v. Touro Infirmary, 578 So.2d 1006, 1008 (La.App. 4th Cir.1991). Moreover, in viewing the plaintiff's petition, a court can consider only the facts; a general statement of a conclusion of law will not state or support a cause of action. Williams v. Orleans Parish School Board, 611 So.2d 718, 720 (La.App. 4th Cir.1992). No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. LSA-C.C.P. art. 931; Stafford Construction Company, Inc. v. Terrebonne Parish School Board, 612 So.2d at 850-51.
Any doubts must be resolved in favor of the sufficiency of the pleading to state a cause of action, and a court must overrule an exception pleading the objection of no cause of action, unless the allegations affirmatively establish that under no facts admissible under the allegations of the petition does the plaintiff state a cause of action. Williams v. Orleans Parish School Board, 611 So.2d at 720. When a petition states a cause of action as to any ground or portion of a demand, the exception pleading the objection of no cause of action should be denied. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d at 1236; Sevarg Co., Inc. v. Energy Drilling Co., 591 So.2d at 1281.
In the instant case, Prudential's demand for a money judgment, as set forth in the original and both amending petitions, is based upon allegations that, pursuant to a recorded conditional assignment of rentals, CC & F assigned and transferred to Prudential all rents accruing from the mortgaged property, which became operative upon default of the note. Prudential further alleged that the leasehold interest in the mortgaged property had been acquired by the defendants subject to the recorded assignment of rentals and that the rentals assigned to Prudential had been distributed to or for the benefits of the defendants. A copy of such recorded assignment of rentals was attached to Prudential's petition as Exhibit 5. Prudential's alternative demand is based upon allegations that, if defendants had no personal liability pursuant to the assignment of rentals, which it denied, then Prudential was without a remedy and was entitled to relief under the theory of unjust enrichment.
Generally, an obligation may be secured by an assignment by a lessor of leases *1138 or rents pertaining to immovable property. See LSA-R.S. 9:4401 A. Such assignment is effected and is deemed perfected by the filing of an original or a certified copy of the instrument creating the assignment in the conveyance records of the parish in which the immovable property is located. LSA-R.S. 9:4401 A.[13] However, an assignment of rentals is ineffective as to third parties if it is filed in the mortgage records of the parish where the immovable property is located. Toomer v. Lowenthal, 430 So.2d 353, 356 (La.App. 3rd Cir.1983). When the debtor is not notified of the assignment and in good faith makes payment of rent to the assignor or his successors, the debtor is exonerated from liability, but the person to whom payment was made shall be accountable and liable to the assignee for the sums received. (Emphasis added). LSA-R.S. 9:4401 G(2).
With regard to the action under the assignment of rentals, although the petition, as amended, and Exhibit 5 (a copy of the recorded assignment of rentals which was attached to the petition) reveal that the assignment was recorded, those documents show that the assignments of rentals were filed in the mortgage records of East Baton Rouge Parish and not in the conveyance records. The certificate of the Clerk of Court reflects that this assignment was recorded on November 22, 1974, however, only in the I mortgage records. LSA-R.S. 9:4401 A specifically provides that the instrument creating the assignment, if it relates to rentals of an immovable, must be recorded in the conveyance records in order to affect the rights of third parties. Under the circumstances, we conclude that such assignment, although binding as between the parties, CC & F and Prudential, is of no effect as it purports to affect the rights of Kloos and Huettner.
Accepting the well-pleaded allegations of fact set forth in Prudential's petitions and its attachments as true, such allegations do not set forth a cause of action for a money judgment against Kloos and Huettner under the recorded assignment of rentals. Nor do the allegations support an action under the theory of unjust enrichment.
The five criteria for an action under the general principle of unjust enrichment or actio de in rem verso, as established by the jurisprudence, are the following:
(1) there must be an enrichment,
(2) there must be an impoverishment,
(3) there must be a connection between the enrichment and the resulting impoverishment,
(4) there must be an absence of justification or cause for the enrichment and impoverishment, and
(5) there must be no other remedy at law available to plaintiff.
Creely v. Leisure Living, Inc., 437 So.2d 816, 821-22 (La.1983).
With regard to Prudential's allegations under the theory of unjust enrichment, which were set forth in its second supplemental and amended petition, Prudential alleged that the funds subject to the assignment of rentals were distributed to or for the benefit of the defendants, that "the distribution of these funds has resulted in an unjust enrichment of the defendants and the unjust impoverishment of Prudential, for which no cause or justification exists." However, as clearly reflected in the pleadings, there was no valid assignment of rentals because of the failure to properly record the assignment in the conveyance records.
Therefore, we find that, based upon the allegations of the petitions, as amended, and the attachments to such petitions, Prudential's petitions fail to state a cause of action as to any portion of a demand, namely the action for a money judgment pursuant to the conditional assignments of rentals or under the general principles of unjust enrichment. In the instant case, the trial court sustained Kloos' and Huettner's peremptory exception pleading the objection of no cause of action and dismissed Prudential's demands against them. Accordingly, the exception pleading the objection of no cause of action was properly sustained.
*1139 We note, however, that LSA-C.C.P. art. 934 directs that a judgment sustaining a peremptory exception shall permit amendment to the petition when the grounds of the objection may be removed by amendment. Doe v. Entergy Services, Inc., 608 So.2d 684, 687 (La.App. 4th Cir.1992), writ denied, 613 So.2d 978 (La.1993), U.S. cert. denied, ___ U.S. ___, 114 S.Ct. 66, 126 L.Ed.2d 35 (1993); Browne v. American Bank and Trust Company of New Orleans, 594 So.2d 1105, 1107 (La.App. 4th Cir.1992). However, the right to amend is qualified by the restriction that the objections be curable. Doe v. Entergy Services, Inc., 608 So.2d at 687. Amendment is not permitted when it would constitute a vain and useless act. Doe v. Entergy Services, Inc., 608 So.2d at 687; Browne v. American Bank and Trust Company of New Orleans, 594 So.2d at 1107. The decision to allow amendment is within the sound discretion of the trial court. Doe v. Entergy Services, Inc., 608 So.2d at 687.
In the instant case, the trial judge did not permit Prudential to amend its petitions. We find that the trial judge abused his discretion in failing to do so. If the assignment of rentals was recorded in the conveyance records in East Baton Rouge Parish prior to the acquisition of the property by Kloos and Huettner, then the assignment of rentals was valid as to third party purchasers, and Prudential may have a cause of action against Kloos and Huettner pursuant to such assignment or under the theory of unjust enrichment. Therefore, we remand this matter to the trial court to permit Prudential to amend its pleading, if it can, to set forth the necessary allegations so as to state a cause of action against Kloos and Huettner.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is affirmed insofar as it sustained the peremptory exception pleading the objection of no cause of action. However, the judgment is amended and the matter is remanded to the trial court to permit Prudential fifteen (15) days from the date this opinion becomes final in which to amend its petition so as to remove the grounds for the objection pursuant to LSA-C.C.P. art. 934, in default of which Prudential's claims against Kloos and Huettner shall be dismissed. The assessment of costs is to await a final determination of the case on the merits.
AMENDED, AFFIRMED AS AMENDED, AND REMANDED.

ON REHEARING
PER CURIAM.
In its application for rehearing, Prudential strongly criticizes this court for its reliance on LSA-R.S. 9:4401 in finding that its petition failed to state a cause of action. However, in its arguments on original hearing in this matter, Prudential argued that "the Assignment of Rentals was recorded against the property and was effective against such subsequent purchasers." In support of this position, Prudential repeatedly cited various sections of LSA-R.S. 9:4401, including subsection A, F, and G(2), the very statute it now argues does not control.
The record clearly shows that, in its petition, as amended, Prudential alleged that it was entitled to recover rent, which had been distributed to the defendants, despite the fact that the funds were subject to a recorded conditional assignment of rentals in favor of Prudential.
As we noted on original hearing, the instrument attached to the petition was not recorded in the conveyance records as required by LSA-R.S. 9:4401. Prudential argues on rehearing that recordation in the mortgage records is sufficient, citing Jay's Commercial Carpets, Inc. v. Magna Interests, Inc., 559 So.2d 1348 (La.1990), and Mexic Bros., Inc. v. 108 University Place Partnership, 488 So.2d 1193 (La.App. 4th Cir. 1986). In both cases cited by Prudential, the courts determined that LSA-R.S. 9:4401 sets forth but one manner in which an assignment of leases and rents can be secured and held that LSA-R.S. 6:830 permits the assignment to be recorded in the mortgage records. However, the assignment of leases and rents in Jay's Commercial Carpets and Mexic Bros. were made in favor of savings and loans. LSA-R.S. 6:830 permits assignments of leases and rents in favor of savings and loans to be recorded in the mortgage records. Therefore, although Prudential correctly *1140 notes that Jay's Commercial Carpets and Mexic Bros. permits recordation of assignments of leases and rents in the mortgage records, Prudential is not a savings and loan and therefore cannot utilize this statute.
In Toomer v. Lowenthal, 430 So.2d 353, 356 (La.App. 3rd Cir.1983), the court noted some other methods for effecting an assignment of rents or other incorporeal rights as regards third persons, including delivery and notice. However, Prudential's petition did not allege any other facts which would state a cause of action pursuant to a valid assignment of leases and rents, which would be effective as against third parties.
Although we affirmed the trial court judgment sustaining the peremptory exception pleading the objection of no cause of action, we remanded the matter to the trial court so that Prudential could amend its petition so as to state a cause of action. If Prudential has factual bases upon which they are entitled to relief, other than the recordation of an assignment of leases and rental in the mortgage records and unjust enrichment, such grounds should be alleged when its petition is amended pursuant to the order of this court.
For these reasons, Prudential's application for rehearing is denied.
NOTES
[1] The lease covered the portion of the One American Place property known as the "bank building."
[2] This second lease covered the portion of the One American Place property known as the "development space."
[3] The property mortgaged was more fully described as follows:

The full and entire leasehold interest created by that certain written lease by and between American Holding Corporation, as Landlord, and C.C. & F. Baton Rouge Development Co., Inc. as Tenant, dated May 19, 1972, filed as Original 26, Bundle 7957 of the Official Records of East Baton Rouge Parish, Louisiana, assigned to CC & F Baton Rouge Development Company by assignment dated October 1, 1973, filed as Original 25, Bundle 8605 of the Official Records of East Baton Rouge Parish, Louisiana, said lease covering the following described property situated in the Parish of East Baton Rouge, State of Louisiana:
A certain lot or parcel of ground, together with all improvements thereon and all rights, ways, privileges and servitudes thereunto belonging or in any way appertaining, located in the City of Baton Rouge, Parish of East Baton Rouge, State of Louisiana and being a portion of SQUARE THREE (3) or FIFTY-FIVE GRASS TOWN, and being shown on a "Survey of a Portion of Square 3 or 55, Grass Town, Baton Rouge, Louisiana, for Cabot, Cabot & Forbes" by Carl L. Mistric, Registered Land Surveyor, May 17, 1972, a copy of which is attached to the aforesaid lease, and according to which map the property is more particularly described as follows:
Commence at a point marking the intersection of the east right-of-way line of North Third Street and the south right-of-way line of North Street for the POINT OF BEGINNING and proceed thence along North Street South 89° 32'47" East a distance of 320 feet to a point marking the intersection of North Street and the west right-of-way line of North Fourth Street and corner; thence along North Fourth Street South 00° 18' 57" West a distance of 277.34 feet to a point and corner; thence North 89° 32'47" West a distance of 42.66 feet to a point and corner; thence South 00° 18'57" West a distance of 42.66 feet to a point on the north right-of-way line of Main Street and corner; thence along Main Street North 89° 32'47" West 92.34 feet to a point and corner; thence North 0° 27'13" East 135.45 feet to a point and corner; thence North 89° 41'03" West a distance of 185.33 feet to a point on the east right-of-way line of North Third Street and corner; thence along North Third Street 0° 18'57" East a distance of 185 feet to the POINT OF BEGINNING.
[4] The assignment and pledge of the lease was recorded in the records in the Parish of East Baton Rouge as Original 58, Bundle 8933 on November 20, 1974.
[5] The conditional assignment of rentals was recorded in the Mortgage Records in the Parish of East Baton Rouge as Original 1, Bundle 8936 on November 22, 1974.
[6] CC & F Baton Rouge Development Co., Inc. held a 12% general partnership interest in CC & F.
[7] The schedule attached to the assignment set forth the percentages of ownership transferred to the corporation and the various individuals as follows:

Ferdinand Colloredo-Mansfeld 2%
G. Alexander Creighton 1%
Charles N. Favazzo 1%
Dennis Kealey 1%
Franklin King, Jr. 2%
Raymond E. Miller 1%
Robert B. Swett, Jr. 1%
Robert C. Elder 5%
CC & F Baton Rouge Development Co., Inc. 62%
 ----
 76%

[8] The following represents the proportionate leasehold interests in the property:

Ferdinand Colloredo-Mansfeld 2%
G. Alexander Creighton 1%
Charles N. Favazzo 1%
Dennis Kealey 1%
Franklin King, Jr. 2%
Raymond W. Miller 1%
Robert B. Swett, Jr. 1%
Robert C. Elder 5%
CC & F Baton Rouge Development Co., Inc. 62%
Cabot, Cabot & Forbes Buffalo, Inc. 24%
 ----
 100%

[9] The original act of assignment was not recorded in the Conveyance records in the Parish of East Baton Rouge. However, by act of correction, ratification, and confirmation, recorded in the Conveyance records in the Parish of East Baton Rouge, as Original 56, Bundle 8937, New CC & F assigned to the respective parties their proportionate leasehold interests in the One American Place property.
[10] Although the judgment of possession set forth that Murphy owned an undivided 30.08% interest in the property, the proper proportionate ownership interest in the leasehold was actually 30.809%.
[11] Pursuant to Letters Testamentary, dated January 22, 1992, in the Succession of Magda Altheim, Carl E. Kloos was appointed testamentary executor.
[12] Pursuant to a motion to correct a clerical error in the judgment, on April 21, 1993, the trial judge signed a second judgment, which corrected a spelling error contained in the original judgment. In all other respects, the judgment remained unchanged.
[13] Under the public records doctrine, a purchaser of immovable property, including the purchaser of a leasehold interest, is charged with the knowledge and is bound by everything that the public record shows. See McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909).