671 So.2d 440 (1995)
Sharon M. HARRIS, Wife of/and Donald R. Harris; Patricia Erwin, individually, and on Behalf of her Minor Daughter, Jessica Erwin; and Bridget King
v.
Ted R. BRUSTOWICZ, M.D., St. Tammany Parish Coroner and St. Tammany Parish Coroner's Office.
Carl Martin BROFMAN
v.
Ted R. BRUSTOWICZ, M.D., St. Tammany Parish Coroner and St. Tammany Parish Coroner's Office.
Nos. 95 CA 0027, 95 CA 0028.
Court of Appeal of Louisiana, First Circuit.
October 6, 1995.
*441 Delbert G. Talley, Covington, for Patricia Erwin, Jessica Erwin and Bridget King.
Natasha R. Zimmerman, New Orleans, for Sharon and Donald Harris.
Alan A. Zaunbrecher and Dennis J. Phayer, Metairie, for Ted R. Brustowicz and Parish Coroner's Office.
L. Blake Jones, New Orleans, for Carl M. Brofman.
Before LeBLANC, WHIPPLE and FOGG, JJ.
LeBLANC, Judge.
The dispositive issue presented in this appeal is whether defendants, Ted R. Brustowicz, M.D., and the St. Tammany Parish Coroner's Office, are immune from suit on the basis of judicial immunity.

FACTS
This appeal involves two consolidated suits against defendants arising out of a tragic occurrence on August 30, 1992, during which several people were shot by Richard Rogowski, who then killed himself. In the first suit (the Harris suit), Donald and Sharon Harris seek damages for the wrongful death of their son, Michael Harris. Patricia Erwin and Bridget King, who were wounded in the same incident, are also plaintiffs in the Harris suit. A second wrongful death suit (the Brofman suit) was filed by Carl Martin Brofman, seeking damages for the death of his brother, Richard Rogowski. The trial court consolidated the two suits.
According to the allegations of plaintiffs' petitions[1]:

*442 1. On August 24, 1992, a request for Protective Custody was filed with the St. Tammany Parish Coroner's Office by Rogowski's uncle, Mario Arthur.
2. The request was executed on a form provided by the coroner's office and specified that Rogowski had threatened to commit suicide, had threatened to kill Bridget King, and was mentally ill and in need of immediate treatment to protect himself and others from physical harm.
3. After filing the request for protective custody, Arthur provided James Hamler, the chief investigator for the coroner's office, with a description of Rogowski's vehicle and his place of employment.
4. At that time, Hamler advised Arthur that Rogowski would be placed under an order for protective custody.
5. On August 24, 1992, Bridget King was contacted by an employee of the coroner's office, to whom she verified Rogowski's suicidal behavior and his threats to kill her. During this conversation, Ms. King was advised that Rogowski would be placed under an order for protective custody.
6. On August 28, 1992, Hamler again advised Arthur that Rogowski would be placed in protective custody.
7. Rogowski was never placed under an order of protective custody.
8. On August 30, 1992, Rogowski entered the residence of Patricia Erwin, fatally shot Michael Harris, and wounded Bridget King and Patricia Erwin before committing suicide.
In their petitions, plaintiffs allege defendants were negligent in the following respects: in either failing to issue a protective order or failing to execute the protective order; in failing to act after agreeing to do so; in failing to implement adequate procedures for the handling of requests for protective orders; and/or in delegating responsibility for the handling of such requests to inadequately trained, unqualified non-medical personnel.
In addition to an answer, defendants filed a peremptory exception raising the objection of no cause of action on the grounds that the coroner was absolutely immune from suit under the doctrine of judicial immunity. After a hearing, the trial court granted defendants' exception and gave plaintiffs ten days to amend their petitions. Plaintiffs then filed amending petitions alleging the coroner acted in bad faith in failing to review the request for protective order, delegating medical decisions to his staff, and failing to supervise his staff. Additionally, plaintiffs alleged the coroner's staff was in bad faith in failing to act expeditiously to take Rogowski into custody after agreeing to do so and in failing to apprise the coroner of the request for protective custody. In response, defendants filed a second exception of no cause of action based on a claim of judicial immunity, which the trial court granted. Plaintiffs have now appealed.

DISCUSSION
An exception raising the objection of no cause of action tests the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged. A court should sustain the exception only when the allegations of the petition, accepted as true, affords no remedy to the plaintiff for the particular grievance. Any doubts must be resolved in favor of the sufficiency of the pleading to state a cause of action. Further, when a petition states a cause of action as to any ground or portion of a demand, the exception should be overruled. Prudential Ins. Co. of America v. CC & F Baton Rouge Development Co., 93-2074, pp. 9-10 (La.App. 1st Cir. 10/7/94), 647 So.2d 1131, 1137; Edwards v. Patterson, 94-1672, pp. 2-3 (La. App. 1st Cir. 8/18/94), 641 So.2d 219, 221.
In this case, the trial court granted defendants' exception on the basis that defendants were entitled to absolute judicial immunity. Based on our review of Louisiana jurisprudence, we believe the trial court erred in reaching this conclusion. Under the doctrine of judicial immunity, a judge is entitled to absolute immunity from liability for acts he performs in his judicial role which are integral to the judicial process. Cleveland v. State, 380 So.2d 105, 107 (La.App. 1st Cir. 1979); Amato v. Office of Com'r of Securities, 94-0082, p. 8 (La.App. 4th Cir. 10/3/94), 644 So.2d 412, 418, writ denied, 94-3024 (La. *443 2/3/95), 649 So.2d 410, cert. denied, ___ U.S. ___, 115 S.Ct. 2582, 132 L.Ed.2d 832 (1995).
In Forrester v. White, 484 U.S. 219, 225, 108 S.Ct. 538, 543, 98 L.Ed.2d 555 (1988)[2], the United States Supreme Court explained the rationale for judicial immunity, stating:
Besides protecting the finality of judgments or discouraging inappropriate collateral attacks ... judicial immunity also protected judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants.
The Supreme Court held that immunity was "justified and defined by the functions it protects and serves, not by the person to whom it attaches." Forrester, 484 U.S. at 227, 108 S.Ct. at 544. In this context, the Court drew a distinction between judicial acts and administrative or executive acts, noting that the latter have not been recognized as judicial acts warranting immunity, even though essential to the functioning of the courts. Forrester, 484 U.S. at 227-28, 108 S.Ct. at 544. Further, the Court indicated recognition of such immunity should be sparing, in view of the fact that absolute immunity is "strong medicine." Forrester, 484 U.S. at 224 and 230, 108 S.Ct. at 542 and 545.
Nevertheless, quasi-judicial immunity has been extended in some instances to nonjudicial persons fulfilling quasi-judicial functions intimately related to the judicial process. See Bell v. Crump, 94-763, p. 7 (La. App. 3rd Cir. 3/8/95), 651 So.2d 975, 979, writ denied, 95-0904 (La. 6/2/95), 654 So.2d 1106; Johnson v. Foti 583 So.2d 1210, 1212 (La. App. 4th Cir.1991); S.T.J. v. P.M., 556 So.2d 244, 246 (La.App. 2nd Cir.1990). The determinative factor is whether the person performs a judicial function with an integral relationship to the judicial process. Bell, 94-763, p. 7, 651 So.2d at 979.
In the present case, plaintiffs do not complain of the exercise of the coroner's judgment resulting in a decision to deny the request for a protective order. Rather, the basis of plaintiffs' claims is the allegation that the coroner failed to personally review the request for protective order and make any decision thereon, failed to provide adequate procedures for the handling of such requests by a well-trained staff, failed to supervise his staff, and delegated responsibility for the handling of such requests to unqualified, non-medical personnel. In the alternative, plaintiffs contend the coroner's office was negligent and acted in bad faith in failing to expeditiously take Rogowski into custody after agreeing to do so. We find that the alleged acts and omissions are not judicial functions integral to the judicial process, but are primarily administrative, executive and/or operational in nature. Accordingly, the trial court erred in concluding the acts and omissions were quasi-judicial functions entitling defendants to absolute judicial immunity. See Kompare v. Stein, 801 F.2d 883, 887 (7th Cir.1986); Lawyer v. Kernodle, 721 F.2d 632, 635 (8th Cir.1983). Cf. Delatte v. Genovese, 228 So.2d 252, 254 (La.App. 1st Cir.1969); Delatte v. Genovese, 273 F.Supp. 654, 657-58 (E.D.La.1967) (in each case the court declined to apply judicial immunity to a coroner).
We are not swayed by defendants' argument that Lacombe v. Todd, 564 So.2d 362, 363 (La.App. 5th Cir.1990), supports their claim for judicial immunity. In Lacombe, the Fifth Circuit held the coroner's office was absolutely immune from liability to a person taken into custody pursuant to a protective order. This holding was based on the court's conclusion that the issuance of the protective order pursuant to La.R.S. 28:53.2 was a quasi-judicial function. Lacombe, 564 So.2d at 363.
Initially, we note that Lacombe is factually distinguishable from the present case. The suit in Lacombe was filed by a person taken into custody pursuant to a protective order. Unlike Lacombe, a protective order was not issued in this case, and does not form the basis of plaintiffs' suits. Further, in arguing that Lacombe supports their claim of absolute judicial immunity, defendants disregard the fact that La.R.S. 28:53.2 *444 was subsequently amended to provide coroners with only qualified immunity in situations such as that presented in Lacombe. Specifically, La.R.S. 28:53.2 D (added by Acts 1990, No. 516, § 1, effective September 7, 1990), provides that coroners "who act in good faith to order persons to be taken into protective custody and transported for examination in accordance with this Section shall not be civilly liable for damages to such persons resulting from those actions." Thus, the holding of Lacombe that the coroner's office has quasi-judicial immunity for the issuance of a protective order was abrogated by the amendment of La.R.S. 28:53.2, which grants coroners only qualified immunity in that situation. See Bell, 94-763, p. 7, 651 So.2d at 979 (holding that a legislative enactment limiting quasi-judicial immunity must prevail over prior jurisprudence recognizing such immunity).
Having determined defendants are not entitled to judicial immunity, we conclude plaintiffs' petitions do state a cause of action for damages. Therefore, the judgment of the trial court granting defendants' exception of no cause of action is reversed, and judgment is hereby entered in favor of plaintiffs denying the exception. This matter is remanded to the trial court for further proceedings consistent with this opinion. The costs of this appeal, in the amount of $724.50, are to be paid by defendants.
REVERSED, RENDERED AND REMANDED.
NOTES
[1] In all respects pertinent herein, the allegations made in the Harris suit and the Brofman suit are substantially the same.
[2] The Louisiana jurisprudence on judicial immunity mirrors the federal doctrine. Cleveland v. State, 380 So.2d 105, 107 (La.App. 1st Cir. 1979); Amato v. Office of Com'r of Securities, 94-0082, p. 8 (La.App. 4th Cir. 10/3/94), 644 So.2d 412, 418, writ denied, 94-3024 (La. 2/3/95), 649 So.2d 410, cert. denied, ___ U.S. ___, 115 S.Ct. 2582, 132 L.Ed.2d 832 (1995).